UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES SCOTT,

               Plaintiff,                    CIVIL ACTION NO. 07-10459

        v.                          DISTRICT JUDGE MARIANNE O. BATTANI

NITIN AMBANI, M.D., ARDESHIR       MAGISTRATE JUDGE VIRGINIA M. MORGAN
FAGHIHNIA, M.D., and MOLLY
SULLIVAN, M.D.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that the defendants violated his

constitutional rights during their medical treatment of him.  The matter comes before the court

on (1) defendants Faghihnia and Antonini's motion to dismiss, (2) defendant Sullivan's motion

for summary judgment, and (3) plaintiff's motion for default judgment against defendant

Ambani.  For the reasons stated below, the court recommends that defendants' motions be

**GRANTED**, plaintiff's claims against defendants Sullivan, Faghihnia and Antonini be

**DISMISSED WITH PREJUDICE**, and plaintiff's motion for default judgment be **DENIED.**

## II.  Background

Plaintiff is serving a life sentence pursuant to state law and is currently incarcerated at the G. Robert Cotton Correctional Facility, in Jackson Michigan.  Since 1979, plaintiff has, at all times, been in the custody of the Michigan Department of Corrections.  (Complaint, ¶¶ 7, 55.) Plaintiff has been diagnosed with prostate cancer (Complaint, ¶¶ 50, 52-53)

### A. Complaint

On January 29, 2007, plaintiff filed a complaint against defendants pursuant to 28 U.S.C. § 1983 (D/E 1).  In Count I, plaintiff alleged that defendants Ambani, Faghihnia, and Antonini violated plaintiff's rights under the 8th and 14th amendments to the United States Constitution by willfully denying medical care for plaintiff's cancer pain (Complaint, ¶ 98).  Specifically, plaintiff alleged that defendant Ambani refused to obtain the truth of plaintiff's health or give plaintiff anything for his back pain (Complaint, ¶¶ 99-100).  Plaintiff claims that, on March 25, 2002, a test given by defendant Ambani showed that plaintiff had a mildly elevated PSA, but no evidence of prostate carcinoma (Complaint, ¶ 27).  Defendant Ambani did not, according to plaintiff, rule out prostate cancer and he acknowledged that the cancer could be developing or simply missed (Complaint, ¶¶ 27, 31).  Defendant Ambani allegedly told plaintiff to see his family physician in a year or so (Complaint, ¶ 32).  Subsequently, when plaintiff was suffering back pain, defendant Ambani allegedly refused to give him any pain pills (Complaint, ¶ 37).

Regarding defendant Faghihnia, plaintiff alleged that defendant Faghihnia denied plaintiff's right to annual health care screening or any other tests for the entire time plaintiff was

under his care, which was from October 18, 2002, to February 4, 2004 (Complaint, ¶¶ 43, 44-46, 101-103).

Regarding defendant Antonini, plaintiff alleged that he also refused to give plaintiff medication for five months following plaintiff's cancer treatment (Complaint, ¶¶ 104-105). According to plaintiff, plaintiff was first referred to defendant Antonini on February 22, 2006, for pain in his lower back, upper thigh, and scrotum, but nothing was done until August 28, 2006 (Complaint, ¶¶ 73-74, 84, 93).

In Count II, plaintiff alleged that defendant Ambani willfully inflicted mental and physical suffering on plaintiff, in violation of the 8th and 14th amendments to the United States Constitution, by causing plaintiff to suffer for more than two years in wonderment of whether plaintiff was dying of cancer (Complaint, ¶¶ 108-109). This stems from defendant Ambani's lack of action following the March 25, 2002 test that showed a mildly elevated PSA and that did not rule out cancer, (Complaint, ¶¶ 27, 31-32).

In Count III, plaintiff alleged that defendant Sullivan intentionally and willfully took plaintiff's semen, in violation of his rights under the 1st, 8th, and 14th amendments to the United States Constitution (Complaint, ¶¶ 112-113). According to plaintiff, he was referred to defendant Sullivan on February 25, 2006 because of his prostate cancer (Complaint, ¶ 53). Once they met, plaintiff allegedly informed Sullivan of his religious belief that God had endowed him with lots of semen so he could have many children (Complaint, ¶ 56). Defendant Sullivan allegedly told plaintiff that, if the cancer had not spread outside of his prostate, there would be no need to treat the seminal vesicle that produces semen (Complaint, ¶ 57). Plaintiff then

allegedly told defendant Sullivan that he did not want radiation treatment on his seminal vesicle even if the cancer had spread, and even if a lack of treatment would shorten plaintiff's life (Complaint, ¶ 58). According to plaintiff, while he was at a radiation treatment on July 18, 2005, a radiation technician informed plaintiff that both his prostate and his seminal vesicle were being treated on the orders of defendant Sullivan (Complaint, ¶ 64). After being confronted by plaintiff, defendant Sullivan allegedly told him that his seminal vesicle should not be so important before she agreed to stop treating it (Complaint, ¶ 65). According to plaintiff, he is now incapable of producing semen (Complaint, ¶ 94).

In Count IV, plaintiff alleged that all defendants denied him adequate medical care, in violation of his rights under the 8th and 14th amendments to the United States Constitution by intentionally denying plaintiff adequate medical care (Complaint, ¶ 116).

### B. Defendants Faghihnia and Antonini's Motion to Dismiss

On March 8, 2007, defendants Faghihnia and Antonini filed a motion to dismiss plaintiff's complaint (D/E 9). In that motion, defendants Faghihnia and Antonini argue that the statute of limitations has passed for majority of plaintiff's claims and that plaintiff failed to exhaust his administrative remedies. Defendants also argued that plaintiff has failed to state a claim that alleged facts evidencing deliberate indifference in their medical care, and plaintiff's vague and rambling complaint must be dismissed.

On March 23, 2007, plaintiff filed a response to the motion to dismiss (D/E 13). Plaintiff argued that the statute of limitations used by defendants was incorrect, because of a Michigan tolling provision, and that he exhausted his remedies before bringing his lawsuit. Plaintiff also

-4-

argued that he asserted a claim against defendants by alleging in his complaint that both defendants had knowledge of plaintiff's serious medical needs and disregarded them.

On April 3, 2007, defendants Faghihnia and Antonini filed a reply to plaintiff's response to their motion to dismiss (D/E 15). Defendants argued that the tolling provision used by plaintiff had been eliminated and that at least two, and probably a third, of plaintiff's administrative grievances were dismissed as untimely.

On April 9, 2007, plaintiff filed a counter response to defendants' reply to plaintiff's response to defendants' motion to dismiss (D/E 18). Plaintiff argued that when a claim arises is a question of federal law and, in this case, his claim only arose when he had reason to know of it, i.e., when he discovered his loss of semen. Plaintiff also argued that there can be no time limitation to file a medical complaint where the plaintiff is still seeking medical help and where he is still be treated for the medical problems.

On April 17, 2007, defendants Faghihnia and Antonini filed a sur-reply to plaintiff's counter response (D/E 19). Defendants argued that, at the time of his treatment, plaintiff was aware of his medical condition and the offered treatment, or alleged lack thereof. Defendants also argues that ignorance of a cause of action does not toll a statute of limitations and that, to the extent that plaintiff argues that he only became aware of his claim when he discovered his loss of semen, that argument only applies to his claims against defendant Sullivan.

### C. Defendant Sullivan's Motion for Summary Judgment

On March 30, 2007, defendant Sullivan filed a motion for summary judgment (D/E 14). Defendant Sullivan argued that, as she was a private physician provided independent care to

plaintiff, she never acted under the color of state law and no claim under 42 U.S.C. § 1983 could

be brought against her.  Defendant Sullivan also argued that plaintiff failed to allege facts that

constituted deliberate indifference on her part because plaintiff failed to allege that she ignored

his serious medical needs or unreasonably delayed his access to medical care.  Defendant

Sullivan noted that she took reasonable measures to abate plaintiff's risk of harm and never

delayed or denied treatment.

On April 20, 2007, plaintiff filed a response to defendant Sullivan's motion for summary

judgment (D/E 20).  Plaintiff argued that the hospital where defendant Sullivan provided him

care and Correctional Medical Services (CMS) had a contract, which placed defendant Sullivan

under contract to provide medical care to prisoners.  Plaintiff also noted that defendant Sullivan

has provided medical care to at least fifty prisoners and that bills for those services establish that

CMA paid for her services.  Plaintiff further noted that defendant Sullivan and the state worked

hand-in-hand in his treatment, as evidenced by the forms they exchanged and the fact that

defendant Sullivan sought permission from the state before administering certain medications.

Regarding whether or not he had stated a claim, plaintiff cited his arguments that defendant

Sullivan intentionally took his semen in violation of his religious beliefs and express statements,

and that she violated plaintiff's constitutional rights by doing so.

### D. Plaintiff's Motion for Default Judgment

On May 2, 2007, plaintiff filed a motion for default judgment against defendant Ambani

(D/E 22).  Plaintiff argued that defendant Ambani was served on February 16, 2007, but has not

responded to the complaint.  Plaintiff also noted that defendant Ambani had previously, in writing, accepted responsibility for plaintiff's prostate problem.

On May 16, 2007, defendant Ambani filed a response to plaintiff's motion for default judgment (D/E 23).  Defendant Ambani argued that plaintiff's initial summons and complaint went to the wrong address, a hospital where defendant Ambani worked, and that the people there were not authorized to accept service on his behalf.  Defendant Ambani also noted that plaintiff seemed to recognize his error, as a second summons and complaint were served on defendant Ambani's correct address.  Defendant Ambani claims that he promptly filed a response to the second summons and complaint.

On May 25, 2007, plaintiff filed a reply to defendant Ambani's response to plaintiff's motion for default judgment (D/E 25).  Plaintiff argued that a person named Patricia Cotten phoned the hospital defendant Ambani works out of and learned that the hospital would accept mail for him.  Cotten also knew that the hospital forwarded the summons and complaint to defendant Ambani, but that he failed to respond in a timely manner.  Plaintiff attached an affidavit from Patricia Cotten in support of his motion.

On June 4, 2007, defendant Ambani filed a sur-reply to plaintiff's reply (D/E 27).  Defendant Ambani argued that Cotten's affidavit is clearly defective and should be stricken because it is nothing more than inadmissible hearsay.  Defendant Ambani also argued that, because service was not made in a permitted manner, default judgment is inappropriate.

### III. Discussion

#### A. Defendant's Faghihnia and Antonini's Motion to Dismiss

##### 1. Standard of Review

Rule 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. Kottmyer, 436 F.3d at 688. A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688.

##### 2. Statute of Limitations

Defendants Faghihnia and Antonini first argue that plaintiff's claims against them are beyond the statute of limitations. In Wilson v. Garcia, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), the Supreme Court held that, because 42 U.S.C. § 1983 contains no statute of limitations, a federal court considering an action brought under that statute must borrow the state statute of limitations that is "most analogous" to apply to the § 1983 claim. Wilson, 471 U.S. at 275. The Court then concluded that the most analogous cause of action

under state law to § 1983 is a tort action for personal injuries. <u>Wilson</u>, 471 U.S. at 279. Thus, federal courts must apply the state statute of limitations for personal injury claims in all § 1983 cases. In Michigan, the general statute of limitations for personal injury actions is three years. <u>See</u> Mich. Comp. Laws Ann. § 600.5851. Moreover, effective April 1, 1994, the Michigan legislature amended the statute in order to abolish imprisonment as a disability that would toll the accrual of the statute of limitations. <u>See</u> Mich. Comp. Laws Ann. § 600.5805. Therefore, plaintiff had three years to bring him claims against defendants Faghihnia and Antonini.

According to plaintiff's complaint, defendant Faghihnia treated him from October 18, 2002, to February 4, 2004 (Complaint, ¶ 46). Given that plaintiff alleged that defendant Faghihnia denied plaintiff's right to annual health care screening and other tests for the entire time plaintiff was under his care, February 4, 2004 would be the last day defendant Faghihnia violated plaintiff's constitutional rights. Plaintiff filed his complaint on January 29, 2007 (D/E 1) and, thus, only his claims of violations between January 29, 2004 and February 4, 2004 are within the three year statute of limitations. Plaintiff does argue that, because he is still suffering from the cancer that defendant Faghihnia should have discovered, his injuries fall within the statute of limitations. Plaintiff, however, mistakes a continuing effect of a prior violation for a continuing violation. <u>See</u> <u>Trzebuckowski v. City of Cleveland</u>, 319 F.3d 853, 858 (6th Cir.2003). "Courts view continuing violations as falling within two categories of narrowly limited exceptions to the usual rule that statutes of limitations are triggered at the time the alleged discriminatory acts occurred." <u>Trzebuckowski</u>, 319 F.3d at 857. Those two narrow exceptions are: "Where the plaintiff can show prior discriminatory activity that continues into

the present, as opposed to prior discriminatory activity whose effects continue into the present and where the plaintiff can show a long-standing and demonstrable policy of discrimination." Bell v. Ohio State Univ., 351 F.3d 240, 247-48 (6th Cir.2003). As the narrow continuing violation exceptions appear to be limited to discrimination claims, they do not apply to this case. Nevertheless, because plaintiff asserted injuries within the statute of limitations, his claim against defendant Faghihnia should not be dismissed. Instead, his claims against defendant Faghihnia are limited to the alleged violations between January 29, 2004 and February 4, 2004.

Defendants also argue, without any citations to the complaint, that the claims against defendant Antonini are clearly beyond the period of statute of limitations. Plaintiff's complaint, however, alleges that he was first referred to defendant Antonini on February 22, 2006 (Complaint, ¶ 73). Any constitutional violations committed at that meeting, or following it, are well within the statute of limitations and plaintiff's claims against defendant Antonini should not be dismissed because of the statute of limitations.

### 3. Exhaustion of Remedies

Defendants also argue that plaintiff's must be dismissed because he failed to properly exhaust all of his administrative remedies prior to bringing this action. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e et seq., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners

to bring a claim in federal court. Jones v. Bock, --- U.S. ----, ----, 127 S.Ct. 910, 914, 166

L.Ed.2d 798 (2007); Woodford v. Ngo, --- U.S. ----, ----, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368

(2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be

proper, including "compliance with an agency's deadlines and other critical procedural rules."

Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with

applicable grievance procedures, specifically deadlines, because "no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings").

In the present case, defendants argue that plaintiff did not properly exhaust his administrative

remedies because his grievances through MDOC were untimely.

As a preliminary matter, it should be noted that defendants rely on the exhibits attached

to plaintiff's complaint in support of their motion to dismiss. In general, matters outside the

pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is

converted to one for summary judgment under Fed. R. Civ. P. 56. See Weiner v. Klais & Co.,

108 F.3d 86, 88 (6th Cir.1997). Nevertheless, in this case, use of the exhibits are appropriate

because they were referred to in the complaint. See Jackson v. City of Columbus, 194 F.3d 737,

745 (6th Cir.1999) (noting that a court may consider exhibits to a motion to dismiss where the

exhibits are "referred to in the plaintiff's complaint" or are public records), overruled on other

grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 n. 2, 515, 122 S.Ct. 992, 152

L.Ed.2d 1 (2002).

Plaintiff filed grievances against both defendant Faghihnia and defendant Antonini. The

grievance against defendant Faghihnia, originally filed April 21, 2006 and labeled JMF-

06.05.0902.12D4, was rejected at Step III of the grievance process as untimely filed (Exhibit 4 to Complaint, Step III Grievance Response, 060500902). As the grievance was not timely filed, plaintiff failed to properly exhaust his remedies regarding his claim against defendant Faghihnia and his claim should be dismissed.

The grievance against defendant Antonini, originally filed June 26, 2006 and labeled JCF-06.07.1076.12D3, was denied at Step III of the grievance process because there was no support for the allegation (Exhibit 4 to Complaint, Step III Grievance Response, 060701076). That grievance had previously been denied on its merits at Steps I and II of the grievance process (Exhibit 3 to Complaint). Considering that plaintiff's grievance was ruled upon at three separate steps and decided on its merits, MDOC itself was satisfied with plaintiff's grievance. The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Woodford, 126 S.Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002)) (emphasis in original). In this case, even if the grievance was technically untimely, the agency addressed the grievance on its merits. That should be enough to satisfy the proper exhaustion requirement. See Jones v Stewart, 457 F. Supp.2d 1131 (D. Nev. 2006) (holding that, pursuant to the PLRA, state inmate properly exhausted administrative remedies before bringing § 1983 action, notwithstanding inmate's untimely grievance on his deliberate indifference claim, where the prison nonetheless addressed the grievance on the merits and inmate appealed through all the agency's levels).

Finding so does not conflict with the Supreme Court's holding in Woodford, where the Supreme Court identified the goals of the exhaustion requirement as including (1) protection of

administrative agency authority, in that the exhaustion requirement gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and (2) discouragement of disregard of the agency's procedures. 126 S.Ct. at 2385. MDOC had a chance to rule on the grievance, it did so, and its authority was protected. Moreover, finding that a agency's ruling on the merits equals proper exhaustion does not encourage a plaintiff to disregard an agency procedures because failure to use the procedure at all, or a finding by the agency that a grievance is untimely, would still bar a claim. Therefore,, because MDOC ruled on the merits of his grievance, plaintiff's claim against defendant Antonini should not be dismissed on the basis that plaintiff to exhaust his administrative remedies.

### 4. Failure to State a Claim

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the 8th amendment. See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a § 1983 claim for a violation of a prisoner's 8th amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need, while the subjective evidence is established by a showing that defendants were aware of the plaintiff's medical need and disregarded that risk by failing to take reasonable measures to abate it. Wilson, 501 U.S. at 297; Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate

indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

As discussed above, plaintiff's claims against defendant Faghihnia involve defendant Faghihnia's alleged failure to order tests and, under the relevant statute of limitations, plaintiff's claims are limited to the period between January 29, 2004 and February 4, 2004. During that period however, plaintiff had not been diagnosed with prostate cancer and, thus, defendant Faghihnia was not aware of plaintiff's medical needs. As defendant was not aware of any medical needs, he certainly did not disregard any medical needs with deliberate indifference and, consequently, plaintiff has failed to state a claim against defendant Faghihnia.

Plaintiff's claims against defendant Antonini involve allegations that defendant Antonini referred plaintiff to Dr. Casey instead of defendant Sullivan, failed to provide pain medication, and refused to examine plaintiff. Those claims merely constitute disagreement with defendant Antonini's medical judgment. For example, while defendant Antonini denied plaintiff's request to be referred to defendant Sullivan, he did refer plaintiff to Dr. Casey and, later, to Dr. Ullah. Likewise, while defendant Antonini did not treat plaintiff at all times and places desired by plaintiff, he did examine and treat plaintiff, and plaintiff's pain did subside. Therefore, while plaintiff may disagree with the manner of defendant Antonini's treatment, he has failed to allege a claim of deliberate indifference.

**B. Defendant Sullivan's Motion for Summary Judgment**

      **1. Standard of Review**

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

### 2. State Actor

One of the elements of a § 1983 claim is that the deprivation of the right was caused by a

person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902

(6th Cir.2003) (quoting Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir.2003)). The crucial inquiry

in determining whether a physician who provides medical services to inmates is a state actor for

purposes of § 1983, is the relationship among the State, the physician, and the plaintiff. West v.

Atkins, 487 U.S. 42, 56 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In West, the United States

Supreme Court held that the defendant-physician who had contracted with the state to furnish

medical services within the confines of the prison to inmates of state-prisons, was acting "under

color of state law for purposes of § 1983" when he treated the plaintiff-inmate. West, 487 U.S.

at 57. The Supreme Court found that the state was affirmatively obligated to provide medical

care to the inmate, it had delegated that function to an otherwise private physician, and the

physician voluntarily assumed that obligation by contract. West, 487 U.S. at 56.

The instant case, however, is distinguishable from the factual setting in West. First, the

physician in West treated the plaintiff-inmate in the prison hospital, subject to all of the pressures

and constraints resulting from security concerns, while the defendant Sullivan freely performed

her medical duties in a much more physician-controlled environment. Moreover, the physician

in West had contracted with the state to provide medical care to inmates in a state-prison

hospital. <u>West</u>, 487 U.S. at 54. Here, however, defendant Sullivan was not employed by the MDOC, nor was she under contract with the state to render medical services to prison inmates. Plaintiff argues that defendant Sullivan had to check with MDOC before administering certain medications, but that is no different than a doctor checking to see if a medication is covered by a patient's insurance. Consequently, plaintiff has not shown that defendant in this case acted under color of state law.

### 3. Deliberate Indifference

As discussed above, a prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the 8th amendment. <u>See</u> <u>Estelle</u>, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's 8th amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 297. To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. <u>Wilson</u>, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need, while the subjective evidence is established by a showing that defendants were aware of the plaintiff's medical need and disregarded that risk by failing to take reasonable measures to abate it. <u>Wilson</u>, 501 U.S. at 297; <u>Farmer</u>, 511 U.S. at 847. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. <u>Gibson</u>, 963 F.2d at 853. Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. <u>Westlake</u>, 537 F.2d at 860 n. 5.

Plaintiff claims that defendant Sullivan both intentionally and willfully took plaintiff's semen, and denied him adequate medical care. Plaintiff has not alleged any facts establishing that defendant Sullivan reacted to his medical needs with deliberate indifference. Instead, plaintiff's complaint establishes that defendant Sullivan treated plaintiff's cancer and stopped the radiation treatment on plaintiff's seminal vesicle as soon as plaintiff asked. To the extent that the seminal vesicle should not have been treated in the first place, that error, if true, is one of negligence and not deliberate indifference.

### C. Plaintiff's Motion for Default Judgment

Fed. R. Civ. P. 55 governs the entry of default judgments in federal court. That rule mandates a two-step process for a party who seeks a default judgment in his favor. First, the party wishing to obtain a default judgment must apprise the court that the opposing party has failed to plead or otherwise defend by requesting "by affidavit or otherwise" that the clerk enter default on the docket. Fed. R. Civ. P. 55(a); see also Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981). Second, following an entry of default by the clerk, "the party entitled to a judgment by default shall apply to the court therefor." Fed. R. Civ. P. 55(b)(2); see also Meehan, 652 F.2d at 276.

In this case, plaintiff did not request that the clerk enter default against defendant Ambani under Rule 55(a) when defendant Ambani failed to respond to the summons and complaint within twenty days. As noted above, an entry of default is a prerequisite to a default judgment. Fed. R. Civ. P. 55. See also Johnson v. Dayton Electric Manufacturing Co., 140 F.3d 781, 783 (8th Cir.1998) ("When a party 'has failed to plead or otherwise defend' against a pleading listed

in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under 55(b).”); <u>Williams v Smithson</u>, 57 F.3d 1081 (10th Cir. 1995) (table); <u>Meehan v. Snow</u>, 652 F.2d 274, 276 (2d Cir.1981); <u>Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC</u>, 220 F.R.D. 303, 305 (N.D.Ohio 2004) (“[A]n entry of default is a prerequisite to a default judgment.”). Thus, because plaintiff failed to comply with the mandatory requirements to obtain default judgment under Rule 55, default judgment should not be entered in his favor.

While plaintiff's failure to move for entry of default may be somewhat technical, it is not insignificant. “An entry of default is not a default judgment.” <u>Arango v. Guzman Travel Advisors</u>, 761 F.2d 1527, 1530 (11th Cir.1985). “The two concepts are distinct and must be treated separately[.]” <u>United States v. Topeka Livestock Auction, Inc.</u>, 392 F.Supp. 944, 950 (N.D.Ind.1975). Moreover, even if plaintiff's motion for default judgment gives defendant Ambani the same opportunity to present mitigating circumstances that he would have had if a default had been entered and he had then moved under Rule 55(c) to set it aside, “[e]ntering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 5(c) is the preferable course because it avoids the need to prepare for and pursue a damage hearing in those instances where the Rule 55(c) motion is granted.” <u>Meehan v. Snow</u>, 652 F.2d 274, 276 n. 5 (2d Cir.1981).

Furthermore, even if the court chose to address plaintiff's motion for default judgment, that motion would be denied. Rule 55(b)(1) is inapplicable here because plaintiff is not seeking a sum certain. Under subsection (b)(2) of Rule 55, entry of a default judgment by the court is entirely discretionary. Among the factors a court may consider in determining whether to enter a

default judgment are the following: "(1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect, and; (7) the preference for decisions on the merits." <u>Russell v. City of Farmington Hills</u>, 34 Fed.Appx. 196, 2002 WL 818304 (6th Cir.(Mich.))(citing <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986)). Mere entry of a default by the clerk, standing alone, does not necessarily compel or warrant the entry of a default judgment.  <u>See</u>, e.g., <u>PepsiCo, Inc. v. Triunfo-Mex., Inc.</u>, 189 F.R.D. 431 (D.C.Cal 1999).  In this case, none of these factors weigh in favor of plaintiff.  Plaintiff failed to allege that he suffered any prejudice from the delay in the filing of the answer, his complaint seems to lack merit, and, moreover, the complaint is rambling and vague.  The amount of money at stake is substantial and defendant Ambani disputes some of plaintiff's material facts. Defendant Ambani also provided an adequate excuse for his neglect in responding and, as always, there is a preference for decisions on the merits.

## IV. Conclusion

For the reasons discussed above, the court recommends that (1) defendants Faghihnia Antonini's motion for summary judgment be **GRANTED** and (2) defendant Sullivan's motion for summary judgment be **GRANTED** and (3) plaintiff's complaint against those parties be **DISMISSED WITH PREJUDICE**.  The court also recommends that plaintiff's motion for default judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: August 24, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on August 24, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan