**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES SCOTT,

                Plaintiff,                Case Number: 07-10459

v.                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

AUDBERTO ANTONINI, M.D.,

                                          VIRGINIA M. MORGAN
                Defendant.            UNITED STATES MAGISTRATE JUDGE

_____ /

**REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Doc. No. 78)**

In this *pro se* 42 U.S.C. § 1983 case, Plaintiff James Scott, a prisoner in the custody of the Michigan Department of Corrections, alleges that he was denied medical treatment in violation of the Eighth and Fourteenth Amendments. The case is on remand from the Sixth Circuit Court of Appeals for further proceedings on Plaintiff's claim against Defendant Auberto Antonini, M.D. only.[1] Antonini has filed a motion for summary judgment, which is the matter presently pending before the court. For the reasons discussed below, the court recommends **DENYING** Antonini's motion for summary judgment.

**I. Factual Background**

At all relevant times Scott was incarcerated and in the custody of the MDOC. In early 2005, Scott was diagnosed with prostate cancer and he received radiation treatment that concluded on

---

[1]Since the time that Antonini treated Scott in prison, Antonini has been convicted of child pornography pursuant to Mich. Comp. Laws 750.145c(2) and his medical license has been suspended.

1

August 3, 2005. (Def.'s MSJ Ex. A, Pl.'s Medical Records p. 439, 665, 686 [hereinafter "Medical Records"]). Antonini was assigned to monitor Scott's condition post-radiation treatment. (Compl. ¶ 70).

On February 7, 2006, Scott reported to Dr. Molly Sullivan, his off-site oncologist, that he had a testicular lump. (Medical Records p. 663). There is no notation in the medical records that Scott was experiencing pain from the testicular lump but Scott alleged in his complaint that he told Dr. Sullivan about the testicular lump and she instructed him on how to monitor the lump. (Medical Records p. 663; Compl. ¶ 71). Dr. Sullivan did not recommend further examination or treatment for the testicular lump. (Medical Records p. 663).

On February 21, 2006, Scott submitted a health care request in which he complained about a lump in his scrotum that was causing him "great pain" and Nurse Joy Ryan responded to the request by scheduling Scott for "sick call" the next day. (Compl. Ex. 22, 2/20/06 Health Care Request; Medical Records p. 254). The examining nurse was unable to palpate the lump but Scott was instructed to discuss the lump with Antonini during his appointment on February 28, 2006. (Medical Records p. 375).

The progress notes from the February 28, 2006 appointment do not reference Scott's testicular lump pain. (Medical Records p. 374). Antonini noted that Scott complained of rectal bleeding and Antonini performed a rectal examination and a guaiac test. (Medical Records p. 374). Antonini recommended that Scott be seen by a gastro-intestinal specialist, undergo a colonoscopy, and have a follow up appointment in one month. (Medical Records p. 374). Although there is no note that Scott complained about his testicular lump at this appointment, Scott alleges in his complaint that he informed Antonini that he had pain from the testicular lump and had back and leg

2

pain, and requested pain medication. (Compl. ¶ 76; Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 3). Antonini did not prescribe Scott pain medication and Scott "suffered in pain from 2/28/06 to 3/14/06 . . . ." (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 5).

At a March 3, 2006 appointment, Scott was examined by an MDOC nurse and he complained of neck pain, sore throat, and dysphagia. (Medical Records p. 373). There is no indication that Scott complained of testicular lump pain at this appointment. The nurse scheduled Scott for an appointment with Antonini the following week, but Scott failed to show for that appointment. (Medical Records p. 373).

Antonini next saw Scott on March 28, 2006 regarding Scott's bowel complaints. (Medical Records p. 373). Antonini noted that Scott had not had a colonoscopy yet and entered another order for the procedure. (Medical Records p. 373). There is no note regarding testicular pain.

One month later, on April 28, 2006, Antonini again evaluated Scott and noted that he had "no new complaints" during the visit. (Medical Records p. 369). Scott contends that he told Antonini that he was "still in great pain" and needed pain medication. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6). Antonini responded that Scott "was a strong man and that [he] did not need anything." Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6).

On May 3, 2006, Scott was examined by an MDOC nurse for a lump on his right eyelid, right eye pain, headache, testicular lump with pain and neck pain. (Medical Records p. 371). The nurse noted that she had reviewed Scott's case with Antonini, who told her that he would discuss the testicular lump pain and neck pain with Scott at his May 28, 2006 appointment at which time he was scheduled to discuss Scott's colonoscopy results with him. (Medical Records p. 371). Scott avers that Antonini told him that he did not have time to examine him and that he would examine Scott

3

at his next appointment on May 28, 2006. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff. ¶ 6). The May 28, 2006 appointment did not occur as scheduled presumably because Scott still had not undergone a colonoscopy.

Scott was seen by a gastroenterologist on May 8, 2006. (Medical Records p. 656-57). Dr. Ullah noted that Scott complained of nodules along the left side of his testes but there is no notation that Scott complained of pain. (Medical Records p. 657).

Scott underwent a colonoscopy on June 12, 2006. (Medical Records p. 645). Scott was diagnosed with hemorrhoids and radiation proctopathy. (Medical Records p. 645). Antonini saw Scott on June 14, 2006 and noted that Scott had undergone a colonoscopy and had hemorrhoids and radiation proctopathy. (Medical Records p. 366). Antonini also noted that Scott's physical condition was "unremarkable" and there is no mention of testicular pain in his notes. (Medical Records p. 366).

Antonini next saw Scott on August 28, 2006, and Scott reported that he was suffering from constipation and had a painful testicular lump. (Medical Records p. 365). Antonini found a one-centimeter, tender, hard mass in Scott's right testicle. (Medical Records p. 365). Antonini ordered ultrasound testing within two weeks and scheduled Scott to return to see him in one month. (Medical Records p. 365).

The ultrasound revealed that Scott's testes "showed normal homogenous echogenic patterns" and Scott's "epididymi were unremarkable." (Medical Records p. 429). The ultrasound did not reveal any abnormalities.

Antonini saw Scott again on November 13, 2006 and December 28, 2006. (Medical Records p. 246, 361). During the November visit, Antonini prescribed Scott Flomax, a drug that is used to

4

treat symptoms of an enlarged prostate. (Medical Records p. 246). The December visit was cut-short by an emergency at the prison but and there is no indication in the medical records why Scott was scheduled to see Antonini that day. (Medical Records p. 361). December 28, 2006 was the last time that Antonini treated Scott before he filed the instant lawsuit on January 29, 2007.

## II. Procedural History

Scott's January 29, 2007 complaint alleged that Antonini and three other doctors deprived him of his constitutional right to medical treatment from 2002 to 2007, while Scott was incarcerated by MDOC. (Doc. No. 1, Compl.). On February 29, 2008, the Honorable Marianne O. Battani accepted this court's recommendations that Scott's complaint be dismissed in its entirety. (Doc. No. 52).

Scott appealed the court's dismissal to the Sixth Circuit Court of Appeals. (Doc. No. 57). The Sixth Circuit issued an opinion affirming the district court's ruling as to all the defendants except for Antonini and remanding the matter for further proceedings in connection with Scott's deliberate indifference claim against Antonini. *Scott v. Ambani*, 577 F.3d 642, 644 (6th Cir. 2009).

## III. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

**IV. Analysis**

An Eighth Amendment "deliberate indifference" claim consists of two components: an objective and a subjective. The objective component requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.'" *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

The subjective component of a deliberate indifference claim requires the plaintiff to show that the defendant had "a sufficiently culpable state of mind in denying [the plaintiff] medical care." *Id*. at 895 (citing *Farmer*, 511 U.S. at 834). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

Antonini argues that he is entitled to summary judgment because Scott has not shown that he suffered a serious medical need. (Doc. No. 72, Def.'s MSJ 12-13). Antonini argues that the testicular lump was not a condition that could result in further significant injury or result in unnecessary and wanton infliction of pain because the medical records indicate that the testicular lump was a cyst that resolved on its own, did not reoccur, and caused mild, sporadic, and

6

intermittent complaints of pain that could have been treated with pain medications available for purchase in the prison commissary. *Id.* at 13. Antonini also argues that there is no evidence that he disregarded Scott's serious medical need. *Id.* at

Scott argues that summary judgment should be denied because he reported to Antonini in February 2006 that he was in great pain, had a testicular lump, and he was concerned that his pain was related to a reoccurrence of his cancer or was due to his cancer treatment. (Doc. No. 77, Pl.'s Resp. 11). Scott also argues that Antonini did nothing to alleviate his concern that his cancer was returning by referring him back to his oncologist or prescribing any pain medication to alleviate his physical pain. *Id.* at 12. Scott further argues that Antonini should have provided pain medication for his lower back pain. *Id.* at 8. Scott contends that there is also evidence that he alerted Antonini to his symptoms and Antonini disregarded his serious medical need. *Id.* at 14.

Scott has met his burden of showing that a question of material fact exists as to whether he had a sufficiently serious medical need. Although Antonini has presented evidence that downplays Scott's allegations of pain and suffering, Scott has responded with his own affidavit asserting that he informed Antonini of his pain and his concern that the pain indicated that his cancer had returned. (Doc. No. 77, Pl.'s Resp. Ex. P, Scott Aff.). Scott has also provided the grievance he filed with MDOC in which he complained that he told Antonini about his pain and Antonini did not prescribe any pain medication. (Doc. 77, Pl.'s Resp. Ex. L, Prisoner Grievance). Lastly, Scott has provided evidence that he has been prescribed pain medication, by other MDOC physicians, since October 2007 for his lower back pain. (Doc. No. 77, Pl.'s Resp. Exs. J, K, Medical Records). Scott has presented evidence from which a trier of fact could conclude that his medical need was sufficiently serious. For this reason, the court recommends that Antonini's motion for summary judgment be

7

denied.

A factual question also exists as to whether Antonini disregarded Scott's medical needs. In order to prevail on the subjective component of his Eighth Amendment claim, Scott must show that Antonini knew of and disregarded an excessive risk to Scott's health or safety. *See Clark-Murphy*, 439 F.3d at 286. Scott has provided evidence that he reported his pain symptoms, both back and leg pain and pain from the testicular lump, to Antonini and his concern that his testicular lump was related to his previous cancer diagnosis but Antonini did not take appropriate action. Given Scott's post-cancer status and his numerous complaints of serious pain, the court finds that a reasonable jury could conclude that Antonini disregarded an excessive risk to Scott's health. For this reason, Antonini's motion for summary judgment should be denied.

Antonini's last argument is that summary judgment should be entered on Scott's delayed treatment claim, to the extent that Scott alleges one, because there is no evidence that the alleged delay resulted in further injury and/or worsening of Scott's testicular lump condition. (Doc. No. 72, Def.'s MSJ 18).

Scott responds that a constitutional violation may be premised on the delay alone when prison officials are aware of a prisoner's serious need for medical treatment and delay that medical treatment for non-medical reasons, and that there is ample evidence Antonini delayed his treatment after being apprised of his symptoms. (Doc. No. 77, Pl.'s Resp. 18).

When a plaintiff's Eighth Amendment claim is based on an alleged delay in treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quotation marks and citation omitted). The Sixth Circuit later clarified in *Blackmore*:

8

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

390 F.3d at 898 (citing *Napier*, 238 F.3d at 742).

To the extent that Scott has pled a claim for delay of medical treatment, this court finds that summary judgment is not warranted at this time. First, Scott has presented medical evidence that he was prescribed pain medications after Antonini was replaced by a different physician. At the very least, the subsequent prescriptions give credence to Scott's allegations that he was in great pain and his condition necessitated pain medications that were not available in the prison commissary. A fact-finder will have to determine what, if any, detrimental effect to Scott's condition was suffered by the alleged delay in treatment. Second, this case may also fall into the *Blackmore* category of "obvious need for medical care," but that is up to the factfinder to determine. Accordingly, the court recommends that the summary judgment motion be denied.

## IV. Conclusion

For the reasons discussed on the record and delineated above, the court recommends that Antonini's motion for summary judgment be **DENIED**.

The parties may file objections to the Report and Recommendation portion of this opinion within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity,

will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: November 19, 2010

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and James Scott via the Court's ECF System and/or U. S. Mail on November 19, 2010.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan